■ In the Matter of BENJAMIN CARABELLO, Petitioner, v CESAR A. PERALES, as New York State Commissioner of Social

Services, et al., Respondents.—Proceeding pursuant to CPLR article 78, *inter alia,* to review a determination of the respondent State Commissioner of Social Services, dated May 13, 1983, and made after a statutory fair hearing, which affirmed a determination of the local agency to make direct utility payments on petitioner's behalf, to deduct that portion of the payment which equals the State-wide monthly home energy payment from petitioner's recurring cash grant pursuant to the aid to families with dependent children program, and to treat the balance of the payment, if any, as an overpayment subject to recoupment.

Petition granted, on the law, to the extent that the determination is annulled, without costs or disbursements, respondents are directed to restore petitioner to guaranteed payment status upon service upon respondent local agency of a copy of the order to be made hereon, proceeding otherwise dismissed, and matter remitted to the Supreme Court, Suffolk County, for a hearing in accordance herewith on the question of counsel fees.

Petitioner is a recipient of a grant under the aid to families with dependent children program. In addition to a basic needs grant, petitioner received a home energy allowance *(see,* Social Services Law § 131-a [3] [c]). In October 1982 petitioner received a voucher from the Suffolk County Department of Social Services (local agency) payable to the Long Island Lighting Company (LILCO), to prevent an imminent shut-off of utility services due to nonpayment. At the time of issuing the voucher, the local agency determined that it would act as guarantor for petitioner's future utility payments *(see,* Social Services Law § 131-s [3]; 18 NYCRR 352.7 [g] [5] [iii]). When faced with an imminent shut-off of utility services in January 1983 for failure to make the monthly utility payments, petitioner again received a LILCO voucher from the local agency. At that time, the local agency determined to make direct utility payments on behalf of petitioner, and to deduct the home energy allowance payment from petitioner's recurring cash grant. Petitioner received notice to this effect dated January 27, 1983, and, pursuant to a timely request, a fair hearing was held on April 14, 1983. At the hearing, the local agency appeared by a representative who had no personal knowledge of petitioner's case and who failed to produce petitioner's case record. Over the objection of petitioner's counsel, the Administrative Law Judge permitted the hearing to proceed. At issue in the hearing was whether the local agency had properly made a determination that petitioner

was unable to manage his financial affairs, a prerequisite to the local agency making direct utility payments on behalf of a recipient *(see,* Social Services Law § 131-s; 18 NYCRR 352.7 [g] [5] [iii]).

The decision after fair hearing, dated on May 13, 1983, confirmed the determination of the agency that petitioner had mismanaged his financial affairs. Petitioner then commenced this CPLR article 78 proceeding in the Supreme Court, Suffolk County. The matter was transferred to this court pursuant to CPLR 7804 (g).

Among the issues which petitioner has raised for our review is the propriety of proceeding with the hearing in the absence of both the case record and the presence of an individual with first-hand knowledge of the reasons for the agency's determination. Petitioner claims that the fair hearing not only offended notions of due process, but also violated one of the respondent State Commissioner's own regulations.

The regulation in question, 18 NYCRR 358.9 (f) and (g), reads:

"358.9 Responsibility of the social services official in cases of proposed discontinuance, suspension or reduction of assistance. *When a social services official proposes to discontinue, suspend or reduce a grant of assistance, he or his designee who has the appropriate authority, shall* * * *

"(f) *take such action as is necessary to assure that an appropriate representative of the agency will appear at the hearing with the case record* and a brief written summary of the agency's case and be prepared to present evidence in support of the proposed action, including: the appropriate case number and the applicable category or categories of public assistance or care; the names, addresses, relationships and ages of persons affected; the decision or action which prompted the request for the fair hearing; a brief description of the facts, evidence and reasons allegedly supporting such decision or action including identification of the specific provisions of law, department regulations and approved local policies which allegedly support the proposed action; the relevant budget or budgets prepared by the social services district for the person or family; *and*

"(g) *take such action to assure that the person who made the determination to discontinue, suspend or reduce assistance, or who is responsible therefor, shall appear at the hearing"* (emphasis supplied).

This regulation requires only that the local agency "take such

action as is necessary to assure" production of the case record, rather than making production of the case record and the person who made the determination a mandatory or absolute requirement. There is no penalty provision within the regulation for the failure to produce the case record or appropriate representative. We interpret the relevant language as imposing a requirement that the local agency make a reasonable and sincere effort to obtain production of said case record.

Viewing the lack of production of the case record as an isolated factor, we would not be inclined to annul the determination solely on this ground. The representative of the local agency indicated at the hearing that she ordered the case file from the central office so that it would be available for the hearing, but its delivery was delayed and she had not yet received it. She did, however, have a fair-hearing summary of the case file. We note that the local agency representative herself requested an adjournment of the hearing in order to be able to produce the case record, but that request was denied by the Administrative Law Judge. More important to our determination is the fact that petitioner's former attorney, who had previously reviewed petitioner's entire case file at the local agency's office, prior to the hearing, was present at the hearing. While that particular attorney was not the one who actually represented petitioner at the hearing, the former attorney was present for the entirety of the hearing, and was a member of the same legal services office as the attorney of record at the fair hearing. The failure to produce the case record therefore did not result in any prejudice to petitioner.

The same cannot be said for the failure of the local agency to have available at the hearing someone with personal knowledge of the circumstances surrounding petitioner's case and the subsequent agency determination. The representative at the hearing testified that she did not have personal knowledge of the facts of the case, now was any effort made by the agency to get someone with personal knowledge to appear at the hearing. We therefore conclude that the fair hearing was conducted in violation of the agency's own regulation (see, 18 NYCRR 358.9 [g]; *Matter of Ray v Blum*, 91 AD2d 822; *see also, Matter of Hagood v Berger*, 42 NY2d 901). As the only witness called by the agency had no knowledge of the facts except for her own review of the case record, the substantial evidence standard was not satisfied (*Matter of Frank v Blum*, 98 AD2d 966; *Matter of Bodden v Blum*, 89 AD2d 588). The determination to place petitioner on direct payment status was improper. We therefore annul that determination. We

decline to make our determination retroactive because to do so would provide petitioner with an undeserved windfall. The deducted energy payments were utilized for petitioner's benefit towards the payment of his utility bills. The amount of those bills, paid in full by the respondent local agency, generally exceeded the amount deducted from petitioner's monthly cash grant. From a realistic standpoint, the agency will never be able to completely recoup the full amount of the payments made on petitioner's behalf. It would be inequitable to force the agency to "refund" to petitioner the withheld money because that would, in effect, result in petitioner receiving double benefits. Under the circumstances of this matter, we could not sanction such a result.

We note that our decision in this case is without prejudice to the local agency to make a future determination that petitioner is unable to manage his own financial affairs. In the event that such a future determination is made and a new statutory fair hearing is held, it would be most beneficial for the agency to have petitioner's case record available at the time of that hearing.

As petitioner has been successful on his claim, which is cognizable under 42 USC § 1983, the case must be remitted to Special Term to afford respondents an opportunity to demonstrate whether special circumstances exist which would bar an award of counsel fees (see, 42 USC § 1988), and, if not, to fix a reasonable fee in accordance with the guidelines set forth in *Matter of Rahmey v Blum* (95 AD2d 294). Any attorney fee awarded by Special Term is properly chargeable to the State rather than to the county (see, *Matter of Unger v Blum,* 117 AD2d 607).

In view of our determination, it is unnecessary to reach the other issues raised by petitioner. Lazer, J P., Thompson, Rubin and Kunzeman, JJ., concur.