■ In the Matter of HELEN WILLIAMS, Appellant, v JOSEPH

D'ELIA, as Commissioner of the Nassau County Department of Social Services, et al., Respondents.—In a proceeding pursuant to CPLR article 78, *inter alia,* to compel the respondent Commissioner of the Nassau County Department of Social Services to act as guarantor for the petitioner's utility payments and to compel him to recover direct utility payments made on the petitioner's behalf at a maximum rate of 10% of the petitioner's household needs, the petitioner appeals, as limited by her brief, from so much of a judgment of the Supreme Court, Nassau County (Morrison, J.), entered October 26, 1984, as dismissed the proceeding.

Judgment reversed, insofar as appealed from, on the law, without costs or disbursements, and matter remitted to the local agency, for further proceedings in accordance herewith. Pending a determination by the respondent local Commissioner as to whether the petitioner is unable to manage her own financial affairs, the local agency is directed to guarantee the payment of the petitioner's bills to the Long Island Lighting Company.

In May 1983 the petitioner, a recipient of public assistance benefits in the home relief category, was threatened with a termination of utility service for nonpayment of her bills. The petitioner thereupon applied to the local agency for assistance to prevent the termination of her utility services, and the agency paid a portion of the utility bill in the amount of $784.96. After paying the arrears on the petitioner's utility bill, the local agency began to pay the petitioner's ongoing utility bills directly to the Long Island Lighting Company (hereinafter LILCO) and to recover for the payment of these bills by "deducting" an amount equal to a one-month utility bill from the petitioner's monthly public assistance grant. For example, in May 1983 the local agency paid the petitioner's utility bill for the period from March 30, 1983 to May 17, 1983 in the amount of $229.29 and deducted $82.29 from her July 1983 grant and $114.89 from her August 1983 grant. The local agency continued this method of direct payment and recovery at all times relevant to this proceeding.

On or about June 10, 1983, the petitioner requested an administrative fair hearing to review the local agency's determination, effective July 1, 1983, to pay her monthly utility bills directly to LILCO, and to recover for payment of these bills by using the "deduction" method of recovery. A fair hearing was held on November 23, 1983. On or about January 6, 1984, a fair hearing decision was rendered by the respondent State Commissioner which affirmed the local Commis-

sioner's determination to use the "deduction" method to recover for payments made directly to LILCO for ongoing utility bills, but reversed the local Commissioner's determination to recover the amount of $784.96 (which had been paid for arrears to prevent a termination of service), without making a proper evaluation as to whether the petitioner was unable to manage her own financial affairs. Subsequent to the date on which the decision after fair hearing was rendered, the local agency, by notice dated February 21 1984, advised LILCO that it was no longer going to "Guarantee" the future payment of the petitioner's utility bills.

On or about April 24, 1984, the petitioner commenced the instant proceeding. In this proceeding she sought, *inter alia*, to review the determination of the State Commissioner which affirmed the local agency's practice of deducting from the petitioner's public assistance grant the amount of the utility payments made directly to the utility company on her behalf. The petitioner also sought, *inter alia*, a judgment compelling the respondent D'Elia to guarantee payment of her ongoing utility bills, and to recoup direct payments previously made at a rate of no more than 10% of household needs.

Shortly after this proceeding was commenced, the petitioner and the State Commissioner agreed to settle the proceeding by a written stipulation. By the terms of the written stipulation, the State Commissioner withdrew his fair hearing decision insofar as it stated that the respondent D'Elia was correct in "deduct[ing]", pursuant to 18 NYCRR 352.29 (e), utility payments made directly to the utility company on petitioner's behalf. The State Commissioner also agreed to the following:

"3. Respondent PERALES agrees that the provisions of Social Services Law § 131-s which require that payments made directly to a utility company on behalf of a public assistance recipient, such as was the case with petitioner herein, be recovered in accordance with 82 ADM-30 by subtracting the home energy allowance or the amount of the bill whichever is less, and 'recouping' the balance of the direct payment from the recipient's public assistance grant at a rate of no more than (10%) per cent of the public assistance recipient's household needs pursuant to 18 N.Y.C.R.R. § 352.31 (d).

"4. Respondent PERALES further agrees that Social Services Law § 131-s (3) (a) and (b), 18 N.Y.C.R.R. § 352.7 (g) (5) (iii) and 82 ADM-30 provide that when a recipient such as petitioner herein, has received a grant from *[sic]* the payment of utility arrears in order to prevent the termination of services, the

local Department of Social Services' agency such as Respondent's D'ELIA's must either make on-going payments directly to the utility company, if the recipient has been determined to be unable to manage his or her own financial affairs *or* act as guarantor of future payments where there has been no such determination.

"5. Respondent PERALES further agrees that it is improper for Respondent D'ELIA to automatically pay the petitioner's future utility bills directly to the utility company without making a determination that petitioner was unable to manage her own financial affairs.

"6. Respondent PERALES further agrees that in the event Respondent D'ELIA determines that petitioner is able to manage her own financial affairs, Respondent D'ELIA's agency must guarantee petitioner's future bills until either (a) she ceases to receive public assistance benefits or (b) the expiration of two years, pursuant to Social Services Law § 131-s (3) (b)".

The respondent D'Elia, however, did not agree to the above stipulation of settlement. Instead, he agreed to comply with that portion of the State Commissioner's determination after the fair hearing that directed the local agency to cease recovering from the petitioner's public assistance grant for the payment of arrears in the sum of $784.96 made to LILCO, agreed to restore to the petitioner any money which had been recovered from her public assistance grant for the payment of the arrears, and agreed to make a determination as to whether the petitioner was unable to manage her own financial affairs pursuant to 18 NYCRR 352.7 (g).

On October 25, 1984, Special Term held, in pertinent part: "The first cause of action challenges the interpretation of the law adopted by the respondents. That issue has been resolved in a manner adverse to petitioner's claim. *(Jones v D'Elia,* [Sup. Ct., Nassau County] Becker, J., 3/30/83, *aff'd* [104] AD2d [1059] NYLJ 10/4/84 p 13 col. 5.)"

Special Term erred in finding the respondent D'Elia's interpretation of the law to be correct. It is well settled that the construction given statutes and regulations by the agency responsible for their administration (here, the New York State Department of Social Services), if not irrational or unreasonable, should be upheld *(see, Matter of Howard v Wyman,* 28 NY2d 434). Here, the State Commissioner's interpretation of Social Services Law § 131-s and its accompanying regulations, set forth in his written stipulation with the petitioner, being neither irrational nor unreasonable, should be upheld. This

case is distinguishable from *Matter of Jones v D'Elia* (Sup Ct, Nassau County, Mar. 30, 1983, Becker, J., *affd* 104 AD2d 1059, *supra),* because the payments, the fair hearing, and the determination in issue all occurred *subsequent* to September 30, 1981, the effective date of Social Services Law § 131-s (3), and thus, that statute and its accompanying regulations are controlling *(cf. Matter of Hamler v D'Elia,* 97 AD2d 411; *Matter of Bostic v Blum,* 93 AD2d 862). We further note that the respondent D'Elia, as Commissioner of the Nassau County Department of Social Services, is a mere agent of the New York State Department of Social Services, and as such may not substitute his own interpretation of the regulations of the State Department of Social Services for that of the State Commissioner *(see, Matter of Beaudoin v Toia,* 45 NY2d 343; *Matter of Patterson v Blum,* 86 AD2d 893; *Matter of Samuels v Berger,* 55 AD2d 913). In view of the foregoing, we remit the matter to the local agency to determine whether the petitioner's ongoing utility bills should be paid directly to the utility company because she is unable to manage her financial affairs *(see,* Social Services Law § 131-s [3]; 18 NYCRR 352.7 [g] [5] [iii]). The petitioner is not entitled to a refund of any home energy allowance previously withheld, because the restoration of such benefits utilized by the agency to pay the petitioner's utility bills would result in a windfall to her *(see, Matter of Carabello v Perales,* 117 AD2d 598). However, any amount deducted from the petitioner's grant to recover the direct payments which was in excess of the home energy allowance plus an appropriate recoupment of 10% of her household needs should be restored to the petitioner.

Finally, we reject the petitioner's claim of entitlement to attorney's fees by virtue of the Civil Rights Attorney's Fee Award Act (42 USC § 1988). In this regard, that petitioner has failed to show the violation of any constitutional right, or the violation by the State of any right created by a Federal statute *(cf. Maine v Thiboutot,* 448 US 1; *Matter of Johnson v Blum,* 58 NY2d 454; *Matter of Carabello v Perales, supra; Matter of Klapak v Blum,* 97 AD2d 764, *affd* 65 NY2d 670; *Matter of Rahmey v Blum,* 95 AD2d 294). Mangano, J. P., Gibbons, Thompson and Bracken, JJ., concur.