OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 Angela Ortiz, a public assistance recipient, and the Department of Social Services (DSS) assert competing claims to the proceeds of a settlement of a personal injury case brought by Ortiz. Ortiz, respondent on this appeal, wishes to retain her portion of the proceeds (net of counsel fees) and terminate future financial assistance, while appellant DSS claims the entire amount in consideration of past benefits paid. We conclude that under Social Services Law § 104 (1) DSS may recoup the settlement proceeds (net of counsel fees) and modify the Appellate Division order accordingly.
 

 I.
 

 Since 1987 public assistance has been the sole means of
 
 *327
 
 support for respondent and her three children. According to DSS, the Ortiz family has received benefits totalling more than $56,000.
 

 In October 1991, after she was injured in an automobile accident, Ortiz retained the law firm of Cenesky, Alenik, Stefanski & Pool to pursue a personal injury claim against the driver of the vehicle in which she was a passenger, and signed a contingency fee agreement obligating her to pay the firm one third of any recovery. Ortiz’s medical expenses were covered by no-fault insurance, and she suffered no permanent injury.
 

 In January 1992, Ortiz sought recertification to continue receiving public assistance. During the process, she was asked in a questionnaire and by a DSS interviewer whether she expected to receive a lawsuit settlement, and each time she answered no. Ortiz read and signed a statement agreeing to inform DSS of any change in her income. Ortiz explains that she had been advised by her attorneys that recovery was remote, and that she intended to notify DSS if she ever recovered on her claim.
 

 Thereafter, on February 25, the driver’s insurer, Allstate Insurance Co., settled Ortiz’s claim for $50,000. Before a check could be issued, DSS contacted Allstate and represented that it had a lien on the settlement proceeds. Allstate accordingly tendered to the Cenesky firm a settlement check in the amount of $50,000 payable to DSS, Ortiz and the firm.
 

 Appellant then commenced this action against Ortiz under Social Services Law § 104 (1) seeking recoupment of past public assistance and obtained a temporary restraining order (TRO) against disbursement of the settlement proceeds. Ortiz in turn sought summary judgment ordering DSS to endorse the check, and DSS cross-moved for summary judgment in the amount of $50,000. Supreme Court, holding that DSS in fact had no lien against the settlement proceeds at the time it had its name added to the check, granted summary judgment to DSS for the settlement proceeds less the agreed attorneys’ fees, and ordered Allstate to disburse the funds $33,217.09 to Ortiz and $16,782.91 to the Cenesky firm. The court dissolved the TRO, and the firm — not a party to the action and unaffected by a stay pending appeal — received its fee.
 

 Ortiz appealed the $33,217.09 judgment against her on the ground that Social Services Law § 131-a (12), requiring DSS to terminate future benefits to a public assistance household in
 
 *328
 
 receipt of a lump sum, entitled her to retain the sum if she chose. DSS cross-appealed, demanding the entire $50,000 from her.
 

 The Appellate Division modified by reversing the award of summary judgment to DSS, concluding that Social Services Law § 131-a (12) precluded DSS from proceeding under Social Services Law § 104. The court further held that the Cenesky firm had a valid retaining lien on the settlement proceeds, and accordingly affirmed the $16,782.91 judgment in its favor, noting that it did so for the purpose of preventing the failure of the law firm to have protected its own interests by filing a Judiciary Law § 475-a notice from prejudicing defendant by leaving her with a debt she could not possibly pay. We granted leave and now reinstate the order of Supreme Court.
 

 II.
 

 At common law, past public assistance could not be recovered from the recipient, as charity, deemed freely given, did not engender any reciprocal obligation
 
 (see, City of Albany v McNamara,
 
 117 NY 168, 174;
 
 see also, Baker v Sterling,
 
 39 NY2d 397, 401; Graham,
 
 Public Assistance: The Right to Receive; The Obligation to Repay,
 
 43 NYU L Rev 451, 478 [1968]). Departing from that principle with "the most restrictive recovery provisions in the nation”
 
 (see,
 
 Graham,
 
 op. cit.,
 
 at 481), the Social Services Law has long authorized DSS, at its option, to bring a recoupment action against an aid recipient discovered to have resources, to recover assistance received during the preceding 10 years (Social Services Law § 104 [1];
 
 Baker,
 
 39 NY2d, at 401;
 
 accord, Matter of Thurston v Duróse,
 
 76 NY2d 683).
 
 [1]
 
 The receipt of public assistance, under the statute, constitutes an implied contract to repay those amounts (Social Services Law § 104 [1]).
 

 Respondent contends that section 104 (1) was superseded in 1985 by enactment of the "lump sum rule” (L 1985, ch 42, § 10), which provides that "No public assistance household having income which ** * * exceeds the household standard of need, because of the receipt in any month of a nonrecurring
 
 *329
 
 lump sum of earned or unearned income, shall be eligible for [assistance] for a period equal to the full number of months derived by dividing” the lump sum by the family’s monthly public assistance benefit (Social Services Law § 131-a [12] [a];
 
 see also,
 
 18 NYCRR 352.29 [h] [1]). Respondent argues that this provision gives her the option to retain the sum and free herself from public assistance.
 

 The lump sum rule, however, enacted in compliance with Federal law, serves a different objective
 
 (see,
 
 Pub L 97-35, 98-369;
 
 see also,
 
 42 USC § 602 [a] [17];
 
 Sutter v Perales,
 
 103 AD2d 1029, 1029,
 
 affd
 
 64 NY2d 1095; Note,
 
 The Effect of the Federal Availability Principle on State AFDC Asset-Transfer Rules,
 
 89 Colum L Rev 580, 592-593 [1989]).
 

 Under prior law, a lump sum was considered income in the month in which it was received, and a resource thereafter, which Congress perceived as giving recipients an incentive to spend the sum in the first month in order to remain eligible for future assistance
 
 (see,
 
 S Rep No. 139, 97th Cong, 1st Sess 436, 505,
 
 reprinted in
 
 1981 US Code Cong & Admin News 396, 702, 771). The lump sum rule was enacted to encourage recipients to budget the sum, mandating their ineligibility for continuing benefits during a period measured by their determined monthly standard of need
 
 (id.).
 
 There is no indication in the statute or its legislative history that this provision was intended to limit DSS’ independent authority to seek recoupment.
 
 [2]
 

 The right of DSS to commence an action under section 104 to recover a lump sum is unqualified — DSS "may bring [an] action” if the recipient received assistance within the preceding 10 years. Section 131-a (12), by contrast, describes the procedure to be followed in the event of "receipt in any month of a nonrecurring lump sum,” which automatically terminates benefits for a prescribed period. Read together, the statutes thus allow DSS the option to commence suit to
 
 *330
 
 recover the cost of past benefits and continue future assistance, or permit the aid recipient to retain the lump sum and terminate future benefits for the defined period. This conclusion is further supported by the fact that DSS permits a recipient subject to termination to surrender the sum voluntarily and remain eligible for benefits
 
 (see,
 
 18 NYCRR 352.29 M).
 

 While respondent makes a cogent argument for retaining the settlement proceeds and ending her family’s welfare dependency, the Legislature has placed that initial choice with DSS, for reasons made clear by the statutory scheme. DSS is obligated to use public funds, which are not unlimited, to meet the needs of all aid recipients. It is charged with responsibility "to eliminate or reduce the need for public assistance, rehabilitate the client and conserve public funds through assignment and recovery”
 
 (see,
 
 18 NYCRR 352.23 [a]) and to "restore such persons to a condition of self-support” (Social Services Law § 131 [1]). To meet these important public and private purposes, DSS has been given the choice initially either to seek recoupment or to permit retention of a lump sum by the aid recipient.
 

 DSS is not
 
 obligated
 
 to seek recoupment of a lump sum; DSS may instead choose to allow an aid recipient to retain a lump sum, which automatically suspends future entitlements. This statutory discretion permits DSS to determine in the first instance whether a particular lump sum justifies litigation; DSS might, for example, conclude that small lump sums are better handled by suspending future benefits for a brief time. And it permits DSS — knowing each aid recipient’s circumstances — to assess whether the recipient can successfully budget the sum through a period of mandated future ineligibility. In the present case, had DSS not sought recoupment but permitted her to retain the $33,217.09, Ortiz would have been ineligible for public assistance for more than four years.
 

 We therefore conclude, as did Supreme Court, that DSS was entitled to summary judgment against Ortiz.
 

 III.
 

 The remaining issue concerns the portion of the recovery ($16,782.91) attributable to counsel fees. No one disputes the amount of the fee, long ago paid over to the law firm, which was not made a party to this action. The question on appeal therefore is whether DSS will have a judgment against Ortiz
 
 *331
 
 for $33,217.09, or for the full $50,000. In the circumstances presented we agree with Supreme Court and the Appellate Division that Ortiz should not suffer this prejudice and that DSS’ recovery against her should be limited to $33,217.09.
 

 Where an attorney undertakes to settle a claim prior to commencement of an action, Judiciary Law § 475-a provides for a statutory lien upon service of a notice of lien, which attaches to any recovery and thus secures the attorney’s right to compensation. The Cenesky firm acknowledges that it failed to seek a statutory lien on Ortiz’s personal injury claim. Rather, the firm argues that the Appellate Division properly gave effect to a retaining lien in its favor and accorded priority to that lien over DSS’ claim to the settlement proceeds.
 

 A common-law retaining lien, also known as a general possessory lien, entitles the attorney "to retain all papers, securities or money belonging to the client” that come into the attorney’s possession in the course of the representation, as security for payment of attorneys’ fees
 
 (see, People v Keeffe,
 
 50 NY2d 149, 155;
 
 see also,
 
 1 Warren’s Weed, New York Real Property, Attorneys at Law, § 6.02 [4th ed]). Because the settlement check issued by Allstate was given to the Cenesky firm and remained in its possession, we agree that the firm acquired a valid retaining lien on the check.
 

 Because a retaining lien is enforceable only by possession, however, that lien cannot be satisfied out of the moneys retained
 
 (Matter of Cooper [McCauley],
 
 291 NY 255, 260; 1 Warren’s Weed, New York Real Property, Attorneys at Law, § 6.03 [4th ed]; Note,
 
 Attorney’s Retaining Lien Over Former Client’s Papers,
 
 65 Colum L Rev 296, 298 [1965]). Thus, contrary to the assertion of the Cenesky firm, the existence of a valid retaining lien on the check did not itself accord the firm an enforceable prior right to the settlement proceeds
 
 (see also,
 
 Note,
 
 Attorney’s Retaining Lien Over Former Client’s Papers, op. cit.,
 
 at 300).
 

 The law firm thus had no lien at the time the check was issued, but, as the parties agree, neither did DSS.
 
 [3]
 
 Rather,
 
 *332
 
 DSS claims priority under the statute, which provides that in a recoupment action pursuant to section 104, DSS "shall be deemed a preferred creditor” (Social Services Law § 104 [1]). DSS became a preferred creditor under the statute only upon commencement of its section 104 recoupment action and did not have that status when the check was issued.
 

 In the circumstances presented, DSS’ claim for a full $50,000 judgment against Ortiz should be denied. But for DSS’ mistaken advice to Allstate, the fees would have actually been paid over to the law firm, as the client directed, before the present action was commenced. Because the Cenesky firm should have and would have been paid out of the settlement proceeds, Ortiz did not "have * * * property” subject to recoupment in excess of her $33,217.09 share (Social Services Law § 104 [l]).
 
 [4]
 
 When DSS commenced suit against Ortiz four days after the check was issued, it acquired preferred creditor status only as to her share of the proceeds.
 

 Finally, we cannot ignore the implications of a contrary conclusion. By affording priority to an attorneys’ lien over DSS’ statutory lien
 
 (see,
 
 Social Services Law § 104-b [9]), the Legislature made clear its intention that attorneys should not be discouraged from representing public assistance clients. The interests of public assistance recipients, and ultimately the public, are served by helping to assure that aid recipients will have representation in pursuing claims for wrongdoing. Allowing DSS priority to the attorneys’ fees in this case undermines that objective.
 

 Accordingly, the order of the Appellate Division should be modified, without costs, by reinstating the order of Supreme Court, Broome County, and, as so modified, affirmed.
 

 Judges Simons, Bellacosa, Smith and Ciparick concur; Judges Titone and Levine taking no part.
 

 Order modified, without costs, by reinstating the order of Supreme Court, Broome County, and, as so modified, affirmed.
 

 [1]
 

 . Section 104 (1) provides: "A public welfare official may bring action or proceeding against a person discovered to have real or personal property * * * if such person, or any one for whose support he is or was liable, received assistance and care during the preceding ten years, and shall be entitled to recover up to the value of such property the cost of such assistance or care.”
 

 [2]
 

 . Respondent’s citations to administrative memoranda and informational booklets reveal both that the budgeting option is available after the recipient has been permitted to retain a lump sum
 
 (see,
 
 Social Services Law § 131-a [12]; 18 NYCRR 352.29 [h] [1], [3]), and that DSS may seek recoupment at the outset
 
 (see, e.g.,
 
 "What You Should Know About Your Rights and Responsibilities”). Similarly, respondent’s reliance on the stipulation in
 
 Woodruff v Perales
 
 (US Dist Ct, WD NY, Jan. 10, 1986, Curtin, J.) is misplaced. DSS agreed to give notice to recipients permitted to retain lump sums of the future period during which they would remain ineligible for public assistance.
 

 [3]
 

 . DSS is entitled to a statutory lien against the recovery on the personal injury claim of an aid recipient upon service and filing of notice (Social Services Law § 104-b). However, it is undisputed that DSS did not satisfy the statutory requirement in this case. Because the lien may not exceed the total amount of assistance furnished after the date of injury
 
 (see,
 
 Social Services Law § 104-b [1]), it would not have afforded DSS a full recovery in any event.
 

 [4]
 

 . Indeed, the firm — not made a party to the recoupment action — was paid immediately upon dissolution of the TRO erroneously granted in favor of DSS.