■ In the Matter of GERALDINE BOYLAND, Appellant, v CESAR A. PERALES, as Commissioner of the New York State Department of Social Services, et al., Respondents. [613 NYS2d

917] —In a proceeding pursuant to CPLR article 78 to review a determination of the Commissioner of the New York State Department of Social Services, dated January 14, 1991, terminating shelter costs, the petitioner appeals from a judgment of the Supreme Court, Queens County (Rosenzweig, J.), dated February 7, 1992, which dismissed a petition.

Ordered that the judgment is reversed, on the law, without costs or disbursements, the petition is granted, the determination of the Commissioner of the New York State Department of Social Services is annulled, and the matter is remitted to the Commissioner of the New York State Department of Social Services for further proceedings to determine the needs of the household.

The petitioner receives public assistance under the State's Home Relief (hereinafter HR) program (see, Social Services Law §§ 157-165). Since June 1987, her disabled husband, who owns the home in which they reside, has been receiving Supplemental Security Income (hereinafter SSI). Prior to that date, the couple received HR for a household of two. The petitioner's husband was billed periodically for real property taxes, fire insurance, and water sewer charges (hereinafter carrying charges). In April 1987 the New York City Department of Social Services (hereinafter the local agency) granted them $2,815.40 to pay past due carrying charges (see, 18 NYCRR 352.4 [b]).

In November 1988 the local agency refused to issue any further payments for carrying charges to the petitioner because her "name [didn't] appear on title, as owner". In a decision dated April 7, 1989, after a fair hearing, the respondent New York State Department of Social Services (hereinafter the State agency) reversed the local agency's denial of payments for carrying charges and, inter alia, directed that the petitioner be paid for these costs. By letter dated May 29, 1990, the local agency again denied the petitioner's request for additional funds to pay carrying charges. The local agency reiterated that the petitioner was not the legal owner of the marital residence and was not legally responsible for the bills. On January 14, 1991, the State agency reversed its prior determination and affirmed the denial by the local agency of the petitioner's request for carrying charge grants. The Supreme Court dismissed the petition challenging that determination. We reverse.

In 1987, 1988, 1989, 1990, and until amended in 1991, 18 NYCRR 352.3 (b) provided that in computing the income of a

recipient under the HR program for purposes of determining the amount of HR benefits, an SSI recipient was not considered to be a member of the household. The HR recipient's monthly standard of need varies depending on family size and is comprised of separate components, including amounts for shelter and other items of special need, as specified in the Social Services Law and regulations. The shelter allowance is based on the amount paid by the household for rent (18 NYCRR 352.3 [a]) or where the household resides in "client-owned property", the shelter allowance is based on the sum of carrying charges, including taxes, interest on mortgage, fire insurance, and assessments for garbage disposal, sewer and water (18 NYCRR 352.4 [b]). While the term "client-owned property" is not defined in the relevant Social Services Law or the regulations, we find that the restrictive interpretation given to that term by the local and State agencies (hereinafter the respondents), limiting it to the legal owners of property, is unwarranted. For example, shelter costs are awarded to children and adults under the Aid to Dependent Children (hereinafter ADC) program although children do not incur direct liability for shelter expenses *(see generally, Matter of Phillip v Perales,* 120 AD2d 597; *Matter of Gaines v D'Elia,* 71 AD2d 1002). Thus, while courts generally defer to the agency charged with responsibility for administration of the statute, and will uphold its interpretation if not irrational or unreasonable, the agency's action must in fact be rational *(see, Matter of Denton v Perales,* 72 NY2d 979, 981). The respondent State agency asserts that the petitioner does not explain why any profit from the sale of the house, were there a foreclosure for failure to pay taxes or other carrying charges, could not be used by petitioner and her husband to relocate. Under the circumstances here, such a result "would be absurd and cruel, and therefore unintended by statute or regulation" *(Matter of Sabot v Lavine,* 42 NY2d 1068, 1069). As to the further argument of the State agency that the Department of Social Services cannot obtain a lien on the property, we note that "[t]he Legislature made the placement of liens discretionary *(see,* Social Services Law § 106 [1]; § 360 [1]), presumably to allow for humane enforcement" *(Matter of Bevins v Perales,* 141 AD2d 955, 956). Thus, we reverse the judgment appealed from, grant the petition and annul the determination of the New York State Department of Social Services.

In light of our determination, we do not reach the petitioner's remaining contentions. Bracken, J. P., O'Brien and Altman, JJ., concur.

Pizzuto, J., dissents and votes to affirm the judgment appealed from, with the following memorandum: The petitioner, a recipient of a grant of Public Assistance through the Home Relief Program, resides with her husband, who receives Supplemental Security Income (hereinafter SSI) benefits, in a home owned solely by her husband. The petitioner has in the past successfully sought Home Relief grants to cover the costs of taxes, water charges and fire insurance (hereinafter "carrying charges") on her husband's residential property. However, on January 14, 1991, the respondent New York State Department of Social Services (hereinafter the State agency) upheld a determination of the New York City Department of Social Services (hereinafter the DSS) which had denied such grants. Specifically, the respondent State agency determined that: "Department regulations at 18 NYCRR 352.4 (b), which authorize the payment of carrying charges, specifically and unambiguously limit such payment to recipients who own the property for which the grants are sought. Similarly, in the case of water charges, 18 NYCRR 352.3 (b) limits payment to recipients who are obligated to pay for water as a separate charge to a vendor. Since the Appellant is not the owner of the property in question and has no vendor relationship with a water vendor, she is ineligible for the payment of carrying charges on the property owned by her husband."

Parenthetically, it does not appear that these issues were appropriately addressed, if at all, in the April 7, 1989 fair hearing determination of the respondent State to which the majority refers. In any event, the 1989 decision was subsequently disavowed in the 1991 decision, which stated: "To the extent that [the 1989] decision authorizes grants for carrying charges for prior periods, that decision is in error and will be given no res judicata effect in reviewing the present matter".

On this appeal, the specific issue to be determined is whether a Home Relief recipient is entitled to carrying charges for premises solely owned by his or her spouse. In my view, the plain language of the regulation at issue clearly supports the respondents' determination that absent a fee interest in the real property, the petitioner is not entitled to the grants for carrying charges. Further, the fact that shelter costs are awarded under the Aid To Dependent Children program, even though the children do not incur direct liability for shelter expenses, does not mandate that the respondents' award grants to pay carrying charges on the petitioner's husband's property. And finally, the record is devoid of any

indication that the respondents' interpretation of the subject regulation will engender a cruel or inhumane result.

## I.

The petitioner's claim is limited to challenging the respondents' interpretation of the subject regulations. Thus, the appropriate standard of review is whether the respondents' determination was arbitrary and capricious. This standard requires the court to assess whether the action in question was taken " 'without sound basis in reason and * * * without regard to the facts' " (*Matter of County of Monroe v Kaladjian,* 83 NY2d 185, 189; *see, Matter of Pell v Board of Educ.,* 34 NY2d 222, 231; *Matter of Heintz v Brown,* 80 NY2d 998, 1001).

It is well settled that the construction given a statute by an agency responsible for its administration, as well as any regulation adopted by the agency, is entitled to great weight and should be upheld if neither irrational nor unreasonable (*see, Matter of Bates v Toia,* 45 NY2d 460, 464; *Matter of Howard v Wyman,* 28 NY2d 434; *Matter of Williams v D'Elia,* 119 AD2d 678). 18 NYCRR 352.4 (b), entitled "carrying charges", provides as follows: "On *client-owned* property used as a home, carrying charges must be met in the amount actually paid by the recipient, but not in excess of the appropriate maximum of the rent schedule, for the items of taxes; interest on mortgage; fire insurance; and garbage disposal, sewer and water assessments" (emphasis added). A grant of assistance under this regulation assists a homeowner to retain possession of his or her own home, despite receiving public assistance. However, as was properly concluded by the respondents, this regulation does not support an award of assistance to petitioner because it authorizes assistance only for "client-owned property." Indeed, given the clear and unambiguous language of the regulation, the respondents' determination that they are authorized to issue funds to pay carrying charges only where the Home Relief recipient owns the property for which such funds are sought is certainly neither an irrational nor an unreasonable interpretation.

Any grant to the petitioner to pay carrying charges would necessarily be based upon her husband's ownership of the house. Significantly, Social Services Law § 158 (a) specifically prohibits such a result. It provides, in relevant part, that "[a] person who is receiving federal supplemental security income

payments and/or additional state payments shall not be eligible for home relief." (Social Services Law § 158 [a]).

Furthermore, other considerations bolster the reasonableness of respondents' interpretation of their regulations. That is, it is entirely reasonable to restrict the payment for the subject carrying charges to only those persons who are able to execute a lien or deed to the local social services district. The ability to require a lien gives the local district an opportunity to recover any past financial assistance upon the sale of the property. By contrast, if the respondents are forced to pay the carrying charges on the husband's property, a non-recipient of public assistance will benefit and the State will have no mechanism by which to recover its expenditures. The fact that the respondents did not request a lien from the petitioner's husband the first time they provided Home Relief assistance to both husband and wife (the husband was a Home Relief recipient prior to obtaining SSI benefits) does not bar them in perpetuity from requesting a lien. Indeed, as noted by my colleagues, the placement of such a lien is wholly discretionary (see, Social Services Law § 106).

The Legislature, by statutory scheme, has charged the respondents with the responsibility " 'to eliminate or reduce the need for public assistance, rehabilitate the client and conserve public funds through assignment and recovery' " (Hoke v Ortiz, 83 NY2d 323, 330; see also, 18 NYCRR 352.23 [a]). The subject regulation, 18 NYCRR 352.4 (e), as well as Social Services Law § 106, are statutory mechanisms by which the respondents may carry out these directives.

In short, I respectfully disagree with my colleagues' conclusion that since the term "client-owned property" is not defined in the Social Services Law or the regulations, the respondents' interpretation of that term is unwarranted as unduly restrictive. On the contrary, in my view, the meaning of the term "client-owned property" means exactly what it says, property owned by the client; the client in this case being the petitioner. The majority, by its decision, has ignored the plain language of the subject regulation and nullified the Legislature's intention to provide the respondents with a mechanism by which they may recover a portion of their expenditures.

## II.

In support of its conclusion that the respondents' definition of "client-owned property" is unduly restrictive, the majority

stresses that shelter costs are awarded to children and adults under the Aid To Dependent Children program (hereinafter ADC), even though children do not incur direct liability for shelter expenses. However, our courts have upheld the discontinuance of ADC benefits to the children of parents who refuse to grant a mortgage, in accordance with Social Services Law § 360, which is analogous to Social Services Law § 106 (Matter of Van Etten v Blum, 79 AD2d 730). Moreover, the Court of Appeals has recognized that there is a distinction between Home Relief and ADC (see, Jiggetts v Grinker, 75 NY2d 411, 420). In Jiggetts (supra), the Court stated as follows: "In contrast [to ADC], eligibility for Home Relief, the other basic program of assistance in New York, is not contingent upon the presence of children in the household and it is not specifically designed to deal with their needs. Given the different focuses of the two programs it is reasonable that the Legislature provided special protection to ensure the health and well-being of children in a program that is dedicated to protecting the welfare of children deprived of parental support". In addition, the Appellate Division, First Department, has acknowledged that Home Relief and ADC recipients are not entitled to identical benefits (see, Matter of Gautam v Perales, 179 AD2d 509, 511). In Gautam (supra), it was recognized that although the Commissioner of Social Services was statutorily obligated to provide realistic rent allowances to ADC recipients, the same was not true for the Home Relief program. Indeed, the Court held that it was within the Commissioner's discretion to determine support levels for adults (see, Matter of Gautam v Perales, supra).

A 1991 amendment to 18 NYCRR 352.2 (b) further supports the conclusion that Home Relief recipients are not entitled to the same treatment as those receiving benefits under ADC. That is, under the 1991-1992 Aid to Localities Budget (L 1991, ch 53), which authorized the Commissioner of Social Services to revise the budget methodology for mixed Home Relief and SSI households, the Commissioner is no longer required to consider an individual seeking benefits under Home Relief to be a separate household from an SSI beneficiary where they reside together (see, Rice v Perales, 156 Misc 2d 631, mod on other grounds 193 AD2d 1135). In effecting this amendment, the Legislature conveyed its conclusion that mixed SSI and Home Relief households might be receiving a disproportionate share of welfare funds (see, Rice v Perales, supra, at 639-640). Under the ADC program, the SSI recipient is still not consid-

ered to be part of the household for purposes of calculating the amount of ADC benefits.

In short, as there exists no precedent for the proposition that Home Relief recipients are entitled to the same benefits as ADC recipients, and since both the courts and the Legislature of this State have recognized that the respective recipients can be treated differently, the majority's contrary conclusion is misplaced.

## III.

The record does not support the majority's conclusion that confirming the respondents' interpretation of the subject regulations would engender an inhumane result. There was no evidence that the petitioner's husband was not in a position to pay the carrying charges of the house, which had no mortgage. Further, contrary to what the majority may have inferred, the respondents neither required nor suggested that the house be sold. Acting in accord with the clear proviso of its regulations, the respondents merely requested that the petitioner be given an ownership interest in the house so that she could be provided with the carrying charges if she otherwise demonstrated that she was entitled to those funds. I fail to see how the respondents' request is inhumane.

The precedential authority cited by the majority is distinguishable and, thus, does not mandate a contrary conclusion. In *Matter of Denton v Perales* (72 NY2d 979, 981), the respondent insisted that under the Social Services Law the petitioner could not be provided with the funds required to purchase the prescribed diet needed to treat her hypoglycemia. The Court held that the "respondent's restrictive reading of the statute— in effect, that food that can be purchased at a grocery can in no circumstances be considered 'medical assistance'—cannot be said to be rational, nor is it humane or in accordance with the legislative purpose" *(Matter of Denton v Perales, supra,* at 981). Of course, in the case at hand, the respondents are not seeking to deprive the petitioner of either food or medical assistance.

Further, in *Matter of Sabot v Lavine* (42 NY2d 1068), the Court held that: "sums deposited in the children's accounts are not available resources within the meaning of the statute or implementing regulation (10 NYCRR 352.23) which must be exhausted before public assistance can be made available. The sums involved are not only trivial accumulations, the record

shows that they are the result of small deposits—generally $5 or $10—representing, indisputably, birthday and holiday gifts from relatives and casual employment by the children themselves." In this case, the respondents do not seek to deprive needy children of trivial accumulated birthday and holiday gifts. And finally, *Matter of Bevins v Perales* (141 AD2d 955) is readily distinguishable since in that case the respondents sought to place a lien against a plot of land owned by the petitioner, valued at approximately $750, on which the petitioner's mobile home was located. The Court noted that although $750 is not a nominal amount in general terms, comparatively speaking, it is of trivial value as real property. The Court upheld the petitioner's refusal to execute the lien, reasoning that the rigid application of the statutes frustrated the policy considerations behind making the placement of liens discretionary; *i.e.,* to allow for humane enforcement. However, whereas the facts in *Matter of Bevins v Perales (supra),* led to the inexorable conclusion that the result would be inhumane and cruel, such is not the case at bar. Here, the husband owns a house which has no mortgage and which is worth considerably more than $750.

In sum, I do not believe that any of the cases cited by the majority have application herein. In my view, it would appear that the majority is substituting its discretion for that of the respondents, without making the threshold finding that the respondents rendered an arbitrary and capricious determination. It would also appear that the petitioner seeks to benefit from a statute which is directed to property owners who are in need of public assistance, when she herself owns no property. Further, the petitioner essentially seeks immunity from the respondents' power to place a lien on property for which they grant carrying charges. Although the placing of a lien by the respondents may be discretionary, taking away the ability to require a lien obviously preempts the opportunity to exercise any discretion.

The petitioner's remaining contentions lack merit.